# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JOSHUA GADD, | : | MOTION TO VACATE |
| Fed. Reg. No. 66196-019, | : | 28 U.S.C. § 2255 |
| Movant, | : | |
| | : | CRIMINAL NO. |
| v. | : | 1:14-CR-291-SCJ-JSA-8 |
| | : | |
| UNITED STATES, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:18-CV-3376-SCJ-JSA |

## MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION

Movant Joshua Gadd has filed the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255.  (Doc. 581).  Movant seeks to challenge the constitutionality of his conviction and sentence following his guilty plea in the Northern District of Georgia.  Movant's motion for an extension of time to file a reply [Doc. 608] is **GRANTED** *nunc pro tunc*.  The reply filed on February 1, 2019 [Doc. 612] is accepted as filed.

I.  Procedural and Factual History

In 2012, the Drug Enforcement Agency ("DEA") began to investigate a series of ostensible pain clinics around the Atlanta, Georgia area suspected of being "pill mill" operations, *i.e.,* alleged schemes to illegally traffic in controlled prescription medications.  (Doc. 198 at 2); *United States v. Gadd*, 701 F. App'x 855, 856 (11th Cir. 2017).  During that investigation, the DEA discovered that a new "pill mill" had

opened in Atlanta around February of 2013, which was managed by Anthony Licata. *Gadd*, 701 F. App'x at 856; (Doc. 1 ¶12).   Through visual surveillance and undercover officers, the DEA learned that Licata, clinic manager Charlyn Carter, Dr. Romie Roland, and security guard Adrian Singletary offered controlled substances to customers without a legitimate medical reason in exchange for a significant amount of money. *Id.* The DEA then obtained court-authorized wiretaps of Licata's phone and began intercepting his phone calls. *Id.*

The DEA's investigation revealed that Movant and three other co-defendants worked as sponsors for the "pill mill" drug distribution scheme, where Movant and the others would arrange for patients to visit the clinic, occasionally pay for the patients' visits, and receive kickback or commission payments of $50 to $100 from Licata for each new patient. *Id.*; (PSR ¶20).   The DEA intercepted at least four calls between Movant and Licata *vis a vis* the wiretap of Licata's phone, during which Movant told Licata that he was on the way to the clinic with recruited patients and Licata would respond by offering Movant commissions as compensation for the recruitment.   *Gadd*, 701 F. App'x at 857; (PSR ¶¶28-47).   The DEA also learned through its surveillance that Movant brought at least ten recruits to the clinic, and on at least one occasion offered Licata $100 worth of cocaine as partial payment for recruits' clinic visits. *Id.*

On August 6, 2014, Movant and several of his co-defendants were charged in a twenty-two count indictment related to the "pill mill" operation. *Id.*; (Docs. 1, 98). Movant specifically was charged with one count of conspiracy to distribute and dispense Oxycodone, Oxycodone and Acetaminophen, and Morphine, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(C) and (b)(2), since he worked as a sponsor for the scheme. *Gadd*, 701 F. App'x 855 at 856-57. In conjunction with the indictment, an arrest warrant was issued for Movant. *Gadd*, 701 F. App'x at 857. A search warrant did not accompany the arrest warrant. *Id.*

The next day at 6:00 a.m., several law enforcement agents went to Movant's residence, knocked on the door and announced their presence. *Id.* The agents waited a short time with no response, and again announced themselves and received no response. *Id.* The agents then entered Movant's residence and arrested him. *Id.*; (Doc. 198 at 5). After arresting Movant and placing him in handcuffs, a few of the agents performed a security sweep of the room and discovered four cell phones in plain view on top of the bed where Movant had been laying. *Gadd*, 701 F. App'x at 857; (Doc. 198 at 7; PSR ¶52). At the direction of DEA Special Agent Scott Nesbit, the agents seized the four cell phones, which later were searched pursuant to a search warrant issued on September 9, 2014. (Doc. 198 at 7-8; Doc. 242 at 2).

Through counsel L. Burton Finlayson, on October 29, 2014, and December 5, 2014, Movant filed a motion and supplemental motion to suppress the evidence

obtained from the four cell phones agents seized from Movant's apartment. (Docs. 118, 137). The undersigned conducted a hearing on the motion on January 22, 2015 [Doc. 160], and entered a report and recommendation ("R&R"), which concluded that the warrantless seizure of Movant's cell phones was justified under the plain view doctrine and as being incident to arrest, and that probable cause adequately supported the subsequent warrant authorizing the search of those phones. (Doc. 198). As a result, the undersigned recommended, among other things, denying the motion to suppress. (*Id.*).

After Movant filed objections to the R&R, U.S. District Judge Steve C. Jones entered an Order and, out of an exercise of caution, recommitted the matter to the undersigned for a second hearing on the limited matter of allowing the search warrant to be introduced as evidence and for Agent Nesbit to testify as to his knowledge about the incriminating nature of the phones at the time they were seized. (Doc. 242 at 7). On December 11, 2015, the undersigned conducted a second hearing, during which the sole witness was Agent Nesbit. (Doc. 261; Hearing Transcript [Doc. 264] ("Hr'g. Tr.")). Agent Nesbit testified that: he has been with the DEA since 2004 and has conducted over fifty drug trafficking investigations; mobile telephones are considered essential "tools" of the drug trade and drug traffickers often use multiple mobile telephones to compartmentalize their operations and limit their exposure by, for instance, providing different contact

4

numbers to different customers or suppliers; prior to Movant's arrest Agent Nesbit knew that Movant had used cellular communications based on the interception of several communications between Movant and Licata; the sister of an individual who had overdosed and died from prescription medication contacted Agent Nesbit and provided him with records of her brother's cellular phone, which included her brother's text messages to Movant where her brother expressed his unwillingness to continue to go to clinics on Movant's behalf. (Hr'g. Tr. at 13-17, 22-23).

The undersigned entered another R&R on February 19, 2016, found that the evidence recounted by Agent Nesbit was more than sufficient to establish probable cause, and again recommended denying Movant's motion to suppress. (Doc. 307). Before the District Court ruled on the motion, however, Movant entered a non-negotiated guilty plea to the conspiracy charge on May 20, 2016. (Doc. 365).

The PSR calculated Movant's base offense level to be 28, with a three-level increase for an aggravating role in the offense pursuant to §3B1.1 of the United States Sentencing Guidelines ("U.S.S.G."),[1] and a two-level reduction for acceptance of responsibility, for a total offense level of 29. (Doc. 477, Sentencing Transcript ("Sent. Tr.") at 3; PSR ¶¶87-96). Coupled with a criminal history

---

[1]    In relevant part, §3B1.1 provides for a three-level increase "if the defendant was a manager or supervisor (but not an organizer or a leader) and the criminal activity involved five or more participants or was otherwise extensive[.]"

category of I, the recommended custody guideline range was 108 to 135 months. (Sent. Tr. at 3; PSR at 34).  Movant's counsel objected to the offense level, the three-level increase for Movant's role in the offense, and the failure to provide Movant with a two-point offense level safety-valve reduction.[2]  (Sent. Tr. at 3; PSR at ¶¶29, 88, 89, 91; *see generally* Doc. 418).

After counsel argued at sentencing that less drugs should have been attributable to Movant, Judge Jones agreed, which lowered Movant's base offense level to 26.  (Sent. Tr. at 3-22).  However, he overruled Movant's objections about the three-level increase for his role in the offense [*id.* at 36], and found that any safety-valve reduction was moot [*id.* at 37] since a safety valve reduction cannot be applied to someone with a supervisory or managerial role in the conspiracy as a matter of law.  *Gadd*, 701 F. App'x at 859.   As a result, Movant's base offense level was 27, with an adjusted guideline range of 70-87 months.  *See* U.S.S.G. Ch. 5 Part A (Sent. Table).   Notably, the Government recommended a less-than-guideline sentence of 66 months, which is ultimately what Movant received.  (Sent. Tr. at 61, 65-66; Doc. 421).

---

[2]     The "safety valve" provisions of 18 U.S.C. §3553 and USSG §5C1.2 permit the imposition of a sentence lower than the statutory minimum when five factors are satisfied.  "A defendant has the burden of proving his eligibility for relief under §5C.1."  *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997).

Mr. Finlayson filed a direct appeal on Movant's behalf, and raised several issues about Movant's sentence:  (1) the Court clearly erred in awarding Movant a three-level role enhancement; (2) the Court should have awarded Movant a two-level safety-valve reduction; (3) Movant's sentence was unreasonable; and (4) the Court erred by admitting illegally seized evidence from Movant's cell phone during sentencing.  *See* Appellate Brief at 18, 56, *United States v. Gadd*, Appeal No. 16-16296 (11th Cir.) (PACER).[3]  The Eleventh Circuit affirmed Movant's conviction and sentence on July 13, 2017.  *Gadd*, 701 F. App'x 855.

Movant executed the instant petition on July 4, 2018, and raises the following grounds for relief:  (1) he received ineffective assistance of counsel when counsel did not pursue the suppression motion after telling Movant that it was "very important;" and (2) his guilty plea was not knowingly and intelligently made.  (Doc.

---

[3]     The Eleventh Circuit addressed Movant's last claim in a footnote:

> We need not, and do not, address Gadd's additional argument that certain evidence from his cell phone was the product of an illegal search.  Gadd acknowledges in his brief that seized evidence, even if seized illegally, is generally admissible at a sentencing hearing.  Gadd otherwise presents no particularized challenge to the reliability of the evidence in question.

*Gadd*, 701 F. App'x at 862 n.8.  Movant argues that through this language the Eleventh Circuit "hinted" that Movant's Fourth Amendment rights were violated. (Doc. 581 at 12).  The Eleventh Circuit did no such thing.  Indeed, the plain language of the footnote clearly states that the court "need[s] not, and do[es] not, address" whether the cell phone evidence was illegally seized, only stating that such evidence would have been admissible at sentencing regardless.

581).  As part of the claim that his guilty plea was not knowingly and intelligently made, Movant states that "his plea was inadequate on account of his lawyer."  (*Id.* at 14).  He also indicates that his lawyer used his therapist and mother to "coax" him into foregoing the suppression argument and entering the plea.  (*Id.* at 13-14).  Based on his *pro se* status, the Court construes these allegations as a claim that his attorney was ineffective for allowing him to enter into a plea that was not knowing and voluntary.[4]

---

[4]   The Government similarly construed Movant's allegations as an ineffective assistance of counsel claim for allowing Movant to enter an unknowing and involuntary plea.  (Doc. 602).  Movant, however, denies that interpretation of his claim but elaborates on his ineffective assistance of counsel claim with "more supporting facts."  (Doc. 612 at 1-2).  Specifically, Movant now argues that Finlayson was ineffective when he refused Movant's request to ask for a change of venue and/or to assert a conflict claim based on the undersigned's previous employment with the United States Attorney's Office ("USAO").  According to Movant, the argument Finlayson should have made was that the undersigned should not have heard the motion to suppress because the undersigned was still employed by the USAO when the DEA investigated his case, when the grand jury indicted him, and when he was arrested and his phones illegally seized.  (Doc. 612).

Movant's argument is incorrect on several levels.  First, the undersigned became a Magistrate Judge and no longer was employed at the USAO, as of June 4, 2012.  The Indictment in this case was returned over two years later, on August 6, 2014, and the arrest and seizures at issue in the motion to suppress occurred the following day, August 7, 2014.  According to the Indictment, the criminal "pill mill" scheme did not begin until February 2013, [1] ¶ 12, several months after the undersigned left the USAO.  Second, even if the matter had been under investigation during the time of the undersigned's employ with the USAO, that would not be grounds for recusal, unless the undersigned actually participated in or supervised this specific matter (which was not the case).  *See* 28 U.S.C. §455(b)(3) (requiring that a judge recuse himself where he has served in governmental employment and in such capacity participated as counsel, adviser, or material witness concerning the

For the following reasons, the undersigned **RECOMMENDS** that the instant § 2255 motion be **DENIED**.

II.   Standard of Review

Congress enacted § 2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally-imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).   Pursuant to § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

---

proceeding or expressed an opinion concerning the merits of the particular case in controversy[.]"); *United States v. Ruzzano*, 247 F.3d 688, 695 (7th Cir. 2001) ("As applied to judges who were formerly AUSAs, §455(b)(3) requires some level of actual participation in a case to trigger disqualification."), *overruled on other grounds by Fowler v. Butts*, 829 F.3d 788, 795 (7th Cir. 2016). Movant, therefore, has not demonstrated that Finlayson was constitutionally ineffective for failing to raise a meritless claim. *See Capshaw v. United States*, 618 F. App'x 618, 622 (11th Cir. 2015) (finding counsel was not ineffective for failing to raise a meritless claim). Third, Movant could not show prejudice with regard to such a claim, where the undersigned's recommendation on the motion to suppress would be reviewed *de novo* by the District Judge, and where Defendant chose to change his plea to guilty prior to a final ruling on that motion.

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." As discussed below and contrary to Movant's argument, Movant's § 2255 motion and the record in this case conclusively show that he is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III.   Analysis

   A.   The Standard For Evaluating Ineffective Assistance Of Counsel Claims

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To

10

establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Secretary, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018). *See also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect it is apparent that counsel chose the wrong course."). An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992). *See also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that his "counsel's constitutionally ineffective performance

affected the outcome of the plea process," *Id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail."). "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice under *Strickland*." *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

B.   Movant Has Failed To Demonstrate Ineffective Assistance Of Counsel.

Movant argues that Finlayson was ineffective for failing to wait for Judge Jones to render a decision on the motion to suppress before advising Movant to enter a guilty plea. In cases where "a petitioner faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion to suppress." *Arvelo v. Secretary, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015).

As discussed previously in Section I., here the undersigned concluded on two different occasions that the seizure of Movant's cell phones was not unlawful, and both times recommended that the motion to suppress be denied. In the first R&R

the undersigned found that there was probable cause as to the incriminatory nature of the phones because, *inter alia*, even though Agent Nesbit did not apply for a search warrant until after the phones were seized in August of 2014, "the affidavit references facts that were known as of August 2014 including interceptions of Gadd's communications back in December 2013[,]" and the affidavit "was relevant to establishing the collective information known to the officers as of the date of Gadd's arrest and the seizure of his phones." (Doc. 198 at 17 n.2).

Movant, however, objected to the undersigned's reliance on the search warrant affidavit since Agent Nesbit did not testify at the evidentiary hearing and the Government did not introduce the affidavit into evidence. (Doc. 208 at 17). According to Movant, therefore, he was denied the opportunity to explore those facts through cross-examination. (*Id.*). Although Judge Jones agreed with the undersigned that "a review of Agent Nesbit's search warrant affidavit can reasonably lead to a logical conclusion that Agent Nesbit knew of the information at issue at the time of the August 2014 seizure of the phones" [Doc. 242 at 7], "in the exercise of caution" he re-committed the "limited matter" to the undersigned for a second hearing, particularly "to allow the search warrant to be introduced as evidence and for testimony by Agent Nesbit as to his knowledge as to the alleged incriminating nature of the phones at the time they were seized." (*Id.*). During the second hearing Agent Nesbit did just that; *i.e.,* he testified that based on his experience in over fifty

drug trafficking rings mobile telephones were "essential" tools of the drug trade, that prior to Movant's arrest he knew that Movant had used cellular communications with Licata from the interception of those calls on Licata's phone, and he was privy to evidence of another person's texts with Movant discussing Movant's sponsorship of that person in connection with the "pill mill." (Doc. 307).

Thus, Nesbit's testimony undeniably addressed the only issue with which Judge Jones expressed caution before adopting the initial R&R. Consequently, a decision by Finlayson not to wait for Judge Jones' inevitable determination to adopt the R&R simply was not outside the range of professionally competent assistance. *See Brown v. Warden, Lee Corr. Inst.*, No. 5:14-04723-JMC-KDW, 2015 WL 10013724, at *9 (D. S.C. Oct. 22, 2015) (finding counsel was not ineffective for failing to file a motion to suppress where counsel had previously had a meeting with the judge and articulated the basis of suppression and the judge made it clear he would not grant the motion to suppress); *Tobbie v. United States*, Nos. 7:10-CV-90084(HL), 7:06-CR-17(HL), 2013 WL 4008631, at *5-6 (M.D. Ga. Aug. 5, 2013) (finding counsel's decision to withdraw motion to suppress so that petitioner could enter a guilty plea was a reasonable professional decision where he did not feel the motion to suppress would have succeeded and the plea would have better benefitted the petitioner because of the acceptance of responsibility and other guidelines reductions). *See also United States v. Rosario-Puente*, 41 F. App'x 483 (1st Cir.

2002) ("[T]o prevail, appellant must overcome the presumption that, under the circumstances, trial counsel's advice to withdraw the motion to suppress and plead guilty might be considered sound strategy.").

Nor has Movant demonstrated prejudice.  To establish prejudice in the context of ineffective assistance of counsel for failure to raise a Fourth Amendment claim, a petitioner must show that "(1) the underlying Fourth Amendment issue has merit and (2) there is a 'reasonable probability that the verdict would have been different absent the excludable evidence.'" *Green v. Nelson,* 595 F.3d 1245, 1251 (11th Cir. 2010) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).  Petitioner cannot do so.

Indeed, other than conclusory statements that "Gadd's 4th Amendment rights seemed to have been violated" because there was a "warrantless search" and "the suppression hand dealt Gadd was a seemingly [sic] winner" [Doc. 581 at 11-13], Movant has not identified any argument that would ultimately have led Judge Jones to reject the R&R and grant the motion to suppress.  Moreover, as Finlayson indicated during the plea hearing, even if the evidence from the phones was suppressed, Finlayson discussed with Movant, and Movant understood, that there was ample other evidence the Government would have presented, which in Finlayson's opinion would have convicted Movant at trial.  (*See* Plea Transcript

[Doc. 491] ("Plea Tr.") at 10).[5]   Other than to state that the motion to suppress seemingly was a "winner" Movant does not discuss what defenses, if any, he would have raised at trial had any such motion to suppress been denied.  As a result, Movant cannot demonstrate that had Mr. Finlayson proceeded with the motion to suppress there is a reasonable probability that Movant would have made any other decision but to enter the plea.  *See Premo v. Moore*, 562 U.S. 115, 129 (2011) ("A defendant who accepts a plea bargain on counsel's advice does not necessarily suffer prejudice when his counsel fails to seek suppression of evidence, even if it would be reversible error for the court to admit that evidence."); *United States v. Jackson*, 596 F. Supp. 2d 124, 127 (D. D.C. 2009) ("[G]iven the lack of evidence that defendant would have succeeded at trial . . . defendant's guilty plea appears to have been the rational choice.").

Likewise, a decision to reject the extremely favorable plea where he received a 66 month sentence would not have been rational.  Having entered a guilty plea, the

---

[5]    Specifically, Judge Jones asked Mr. Finlayson whether he had advised Movant concerning the legalities of any evidence the Government had against Movant, and whether Movant was entering a guilty plea because of any illegally obtained evidence.  (Plea Tr. at 10).  Mr. Finlayson responded:  "There has been a well-litigated motion to suppress regarding cell phones, and we've discussed that ad nauseam and briefed him a good bit.  And my overall view of the matter is even if those phones were suppressed, there's plenty of other evidence and cooperating co-defendant testimony and wiretap evidence that he would be convicted at trial.  So we have – I have discussed those things with him, and we understand that by pleading guilty that issue dies."  (*Id.*).

Government recommended, and Movant received, a three-point reduction for acceptance of responsibility, Finlayson successfully argued that less drugs should have been attributed to Movant, which lowered his base offense level, and the Government recommended a below-guideline sentence.  Had Movant proceeded with an unsuccessful motion to suppress and went to trial alongside his co-defendants and with no clear defense, Movant's sentencing exposure would have significantly increased.

Indeed, without any the reductions he received, Movant's guideline range, at the very least, would have been between 108 and 135 months.  *See* U.S.S.G. Ch. 5 Part A (Sent. Table).  That guideline range, however, is based on the amount of drugs that was attributable to Movant in connection with his plea, but, after a trial with co-conspirators, could have been a lot more, potentially raising his base offense level. *See, e.g., United States v. Ismond*, 93 F.2d 1498, 1499 (11th Cir. 1993) ("For sentencing purposes a member of a drug conspiracy is liable for his own acts and the acts of others in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in connection with that activity.").  Considering that the maximum sentence is twenty years, Movant's five-and-a-half year sentence dramatically could have increased after a failed motion to suppress and a joint trial with co-conspirators.  *See id.*  Thus, a rational person in Movant's situation would not have rejected the plea, and Movant has therefore failed to demonstrate prejudice.

17

*United States v. Miranda-Alfaro*, 462 F. App'x 935, 937 (11th Cir. 2012) (finding the movant could not demonstrate prejudice because a rational person would not have rejected a plea bargain where he received the "exceptional benefit" of lowering his sentence of imprisonment by eight years); *United States v. Mooneyham*, 580 F. App'x 657, 659-60 (10th Cir. 2014) ("Because Mr. Mooneyham has not identified facts indicating that a rational defendant might have preferred trial over the plea offer, he cannot show prejudice; thus, we reject the claim of ineffective assistance of counsel."); *United States v. Lewis*, No. 15-cr-335-WJM-2, 17-cv-53-WJM, 2018 WL 1456274, at *6 (D. Colo. Mar. 23, 2018) (defendant did not show that it would have been rational to go to trial where she entered a plea to possession with intent to distribute more than 50 grams of methamphetamine and received a 56-month term of imprisonment, because she presented no evidence of a defense she would have raised at trial and the potential penalty would have been at least the 120-month statutory minimum).

      C.    <u>Movant's Claim That His Plea Was Involuntary Is Procedurally Barred, And In Any Event, His Plea Was Voluntary.</u>

        1.   *Procedural Default*

The Government argues that Movant's claim that his plea was not voluntary is procedurally barred. (Doc. 602 at 13). The undersigned agrees.

A claim that a plea was not knowing and voluntary must be raised on direct appeal or it is procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614,

621 (1998) ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."); *United States v. Pearl*, 288 F. App'x 651, 655 (11th Cir. 2008) (citing to *Bousley* and stating that "[t]he Supreme Court has 'strictly limited the circumstances under which a guilty plea may be attacked on collateral review.'"). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622; *Weinacker v. United States*, No. 16-17153-E, 2017 WL 5665450, at *4 (11th Cir. June 16, 2017).

To the degree that the Court could construe Movant's argument as one that Finlayson's ineffective assistance provides cause for the procedural default of this claim, as discussed previously in Section III.B., Movant has not established that Finlayson was constitutionally ineffective. Nor has he shown that he is actually innocent. Movant, therefore, has not overcome the procedural default of this claim.

2. *Voluntary Plea*

Even if Movant had overcome the procedural default of this claim, however, he has not demonstrated that his plea was anything other than voluntarily, intelligently, and knowingly entered. Movant makes several arguments as to how his plea was not voluntary: he was "under severe mental stress," was "undergoing court-ordered therapy," he had a "nervous breakdown," was "in a fog," and was

19

"suffering from drug withdrawal and strong anxiety;" his plea was coerced because most of the plea process was not explained to him; he was told just to "agree with the judge" when he entered his plea and that his lawyer would get a good deal to end the case; he was not fully aware of all of the aspects of entering a guilty plea; his lawyer and therapist threatened him with a ten year sentence if he lost at trial and "maximum security" if he did not enter a plea; his lawyer "used his mother and his own therapist to coax him into pleading guilty instead of waiting on a ruling from the Court on a very 'important' suppression motion with a good chance of winning, to hear the lawyer tell it;" and Agent Nesbit made several false statements during the suppression hearing, about which his lawyer did nothing. (Doc. 581 at 8-9, 13; Doc. 581-1; Doc. 612). Movant also claims for the first time that Finlayson promised him that he would receive no more than a 36 month sentence. (*Id.*). All of these allegations are in direct conflict with Movant's sworn testimony during the plea hearing.

There is a strong presumption that statements made during the plea colloquy are true, and "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Anderson*, 384 F. App'x 863, 865 (11th Cir. 2010) ("There is a strong presumption that statements made

during a plea colloquy are true."); *accord, United States v. Munguia-Ramirez*, 267 F. App'x 894, 897 (11th Cir. 2008)*; Patel v. United States*, 252 F. App'x 970, 974 (11th Cir. 2007).  Where a Movant's claim of ineffective assistance of counsel is in direct conflict with his statements under oath, he has a strong burden to show that his statements under oath were false.  *Patel*, 252 F. App'x at 974-75.  Movant, however, has not met this burden.

After being sworn in during the plea hearing, Movant told the Court that he struggled with alcohol and drug addiction and had "relapsed" the night before by having two drinks, but that any such relapse was not affecting him in any way during the plea hearing.  (Plea Tr. at 6).  The Court then followed up with Finlayson:

| | |
|---|---|
| **COURT**: | Mr. Finlayson, you've been around Mr. Gadd on a number of occasions.  Do you see any effect on him today? |
| **FINLAYSON**: | No.  No, sir.  He's had some mental health issues, but, no, sir, he's where he should be today. |

(*Id.*).  The Court then asked Movant whether he understood what was going on today, to which Movant responded, "Fully, yes, sir."  (*Id.*).

Movant then proceeded to swear that:  nobody used any force, threat of force, or made him enter his plea; no one promised him anything in order for him to enter the plea; he was entering the guilty plea freely and voluntarily; and he had had sufficient time to think about and discuss the matter fully with his attorney before entering the plea.  (Plea Tr. at 9-10).  Moreover, when asked if he was satisfied with

Finlayson's representation Movant responded, "He's a good man." (*Id.* at 12). Movant's sworn statements also indicate that Movant understood the possible range for sentencing, as well as the fact that he could not withdraw his plea even if he received a more severe sentence than he expected or thought was fair. (*Id.* at 15, 17).

The record demonstrates that Movant voluntarily entered a guilty plea with a full understanding of the charges and consequences, and his present self-serving conclusory allegations that counsel promised him a certain punishment, that his state of mind was somehow diminished based on his withdrawal symptoms and ADHD, and/or that he was coerced into entering a plea cannot overcome the strong presumption of the verity of his previously sworn statements. *See, e.g., United States v. Perez-Leyva*, No. 18-15184, 2019 WL 5061374, at *2 (11th Cir. Oct. 9, 2019) (affirming lower court's finding that plea was voluntary despite present arguments to the contrary because at the plea hearing the defendant stated that he had been mentally ill, was currently taking medicine for depression, he had not taken his medicine that afternoon but believed his mind was clear and that he understood the charge against him and the penalties he faced, he was satisfied with counsel's representation, and defense counsel stated that he believed defendant was competent); *Orange v. United States*, No. 16-12842-A, 2017 WL 5714719, at *2-3 (11th Cir. Jan. 6, 2017) (affirming district court's denial of defendant's motion to

22

withdraw plea where he claimed in an affidavit in conjunction with the motion that his plea was unknowing and involuntary because he did not understand how severe his sentence could have been, but the affidavit was undermined by the record where during the plea colloquy he stated that he understood the consequences of his plea and the potential sentence he faced); *Abdul-Aziz v. United States*, Nos. 1:05CV86, 1:03CR39, 2008 WL 4238943, at *6 (N.D. W.Va. Sept. 12, 2008) (rejecting the movant's sworn statements in his §2255 motion that conflicted with his sworn plea testimony); *United States v. Miller*, 3 F. Supp. 2d 376, 382 (W.D. N.Y. 1998) (rejecting the movant's affidavit that conflicted with his sworn testimony during the plea colloquy).

IV.   Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Joshua Gadd's motion to vacate his sentence [Doc. 581] be **DENIED WITH PREJUDICE**.

V.   Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. § 2253(c)(2) provides that a certificate of appealability ("COA") may issue

"only if the applicant has made a substantial showing of the denial of a constitutional right." In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere 'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the § 2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant has not demonstrated that he received ineffective assistance of counsel, that he procedurally defaulted his claim that his plea was involuntarily entered, and/or that his plea was, in fact, knowing and voluntary. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED AND ORDERED** this 26th day of November, 2019.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE